THE REBECCA SHEPHERD.

THE BENJAMIN BOURNE.

THE REBECCA SHEPHERD *v.* THE BENJAMIN BOURNE.

(*District Court, E. D. Pennsylvania.*   December 6, 1887.)

COLLISION—INEVITABLE ACCIDENT.

 The schooners A. and B. were sailing early in the morning, off Cape Cod. The wind was blowing freshly from the south-west, or nearly so; the sea was chopping, and the weather foggy and "thick." Each vessel maintained a vigilant lookout, and signaled frequently by horn. Their general course was the same, and both were close-hauled. The A. was on her starboard tack, heading nearly south-east by south, and the B. was on her port tack, heading about south-west. Neither could see the other or hear the signals, until immediately before the collision. When a collision was imminent each acted promptly, and both went to starboard. The A. contended that the B. should have ported instead of starboarding. The B. claimed that the accident could not be avoided. *Held,* that the collision was the result of an inevitable accident.

In Admiralty.
*Flanders & Pugh,* for libelant.
*Henry R. Edmunds,* for respondent.

BUTLER, J.   In the early morning of August 14, 1886, the libelant, when 12 or 15 miles south-east of Cape Cod, was run into by respondent, and seriously damaged.   Both vessels were bound for Philadelphia, sailing on the same general course, each in ballast and close-hauled, the former on her starboard tack, heading nearly south-east by south, and the latter on her port tack, heading about south-west.   The wind was south-west, or nearly so, blowing freshly, and the sea chopping.   The weather was foggy and thick.   Each vessel maintained a vigilant lookout and signaled frequently, by horn.

_____
[1] Reported by C. B. Taylor, Esq., of the Philadelphia bar.

While the libel and answer charge the respective parties with serious faults, the libelant now stands alone on the allegation that the respondent, on coming into view, should have ported her wheel and luffed, instead of starboarding to go astern; and the respondent confines herself to the allegation that the former should have held her course, instead of starboarding as she did; that her speed was too great; and that the collision was inevitable. The situation of the vessels, their courses through the water, imposed on respondent the duty of keeping off, and on the libelant that of holding her course. In view, however, of their close proximity, the libelant was justifiable in changing as she did, although it is probable the change brought her stern nearer the respondent. If her rate of speed was too great, this did not tend to the collision, but rather to facilitate the respondent's effort to pass her stern.

A careful examination of the case has satisfied me that neither vessel was in fault,—that the collision was unavoidable. The defense of inevitable accident is not often sustained, and should not be. Generally, indeed almost universally, collisions are attributable to negligence, and it is only where the absence of negligence is clearly shown that the defense should be sustained. Here, I am fully persuaded, each vessel did her whole duty,—was entirely free of fault. Neither was able to hear the other's signals, nor to see her approach, until so near that the collision was unavoidable. While the libelant now puts the distance at 300 yards, the libel states it to have been two lengths, (270 feet,) and the respondent puts it at about 250 feet. The precise distance cannot, of course, be known, nor very nearly approximated; the witnesses guess at it simply, and their guessing is no doubt wild. That the distance was so short as to render the situation very dangerous is clear. It produced instant alarm on both vessels. The libelant's officers shouted orders to the respondent, as well as to her own crew, and varied her course, which was only justified by the peril impending, and the shock followed almost immediately, before the libelant had succeeded in turning her head more than two points. The collision was therefore, we repeat, unavoidable. This appears from the libelant's testimony, as well as from the respondent's.

It is urged, however, that the injury would have been less if the respondent had ported instead of attempting to go astern. This is by no means certain; to have brought the vessels side by side would have required a change of course in each of about five points, or ten between them. As the libelant had not succeeded in getting off more than two when struck, it is manifest that the vessels could not have been brought to this position, and that the attempt to do it would simply have landed the blow further towards the libelant's bow, where the injury might have been as great, or greater. Granting, however, that the respondent, under the necessity for immediate action, in view of the danger, failed in judgment respecting the best method of escape, such failure is not a fault for which she is liable. *The F. P. Hall*, 14 Fed. Rep. 408; *The John Stuart*, 4 Blatchf. 444. To say the least, whether she should have ported and fallen off eastward or starboard to go astern, was debatable. To do

either would not have been a mistake; which was best was simply a question of judgment. The two experts called differ about it. Her master, an experienced, competent seaman, who was earnestly seeking to escape the danger, selected the course adopted; whether his judgment was right cannot be ascertained, and is not important. With a little more space he doubtless would have gone clear, if the libelant had held her course. To measure the distance accurately under the circumstances, and know whether it was sufficient, was impossible. No one was better capable of judging than he, and he believed it to be sufficient. He could turn in this direction (from the wind) readily and quickly, while he could not in the other. With sufficient space between the vessels this was not only the proper movement, but the only one allowable.

The mate, who was on deck when the vessels came into view, had instantly given an order to port, which being heard by the master, who was below, he ran up and countermanded it by the order to starboard. This countermand is complained of as a fault, on the ground that it delayed and embarrassed the effort to keep off. But why should it be complained of? The master's judgment was as good as that of the mate, probably better, and no appreciable time had been lost. The vessel's course was not affected by the first order. There is no satisfactory evidence that the wheel had been changed. What the libelant's witness says respecting it is incredible; the circumstances (the danger and excitement, the distance and difficulty of seeing) forbid belief that he saw and noted what he asserts. It would be interesting to hear the respondent's wheelsman, but I cannot believe his testimony is important. Suppose the wheel had been changed, the vessel's course was not affected, and the delay must, therefore, have been but momentary, and immaterial. If the order to starboard had been given by the mate instead of that which he gave, the result must have been the same. This cannot be doubted. Possibly the blow might have been a little further back, but the consequences would have been the same. The libel must be dismissed.